ILENE M. ARNDT, Indiv. and as Special Adm'r of the Estate of James Arndt, Deceased, Plaintiff-Appellant, v. RESURRECTION HOSPITAL, Defendant (Nathaniel McParland, Defendant-Appellee).

First District (2nd Division)   No. 87—0322

Opinion filed November 3, 1987.

Keith L. Young, of Lambruschi, Young & Associates, and Sidney Z. Karasik, both of Chicago, for appellant.

Robert Marc Chemers, John V. Smith II, and Robert J. Franco, all of Pretzel & Stouffer, Chartered, of Chicago, for appellee.

JUSTICE BILANDIC delivered the opinion of the court:

Plaintiff appeals from orders dismissing her second amended complaint against defendant Dr. McParland, with prejudice, on the ground that it was time barred, and denying her motion to reconsider that dismissal.

Plaintiff brought a wrongful death action alleging medical malpractice against defendant Dr. McParland and others not involved in this appeal.

The plaintiff's decedent, James Arndt, was hospitalized at Resurrection Hospital from January 7, 1983, until the time of his death on January 18, 1983.

On December 21, 1984, plaintiff filed a complaint against defendant Resurrection Hospital claiming that her husband died as a result of negligent care and treatment by the hospital while he was a patient. Dr. McParland was named as a "respondent in discovery" in that complaint pursuant to section 2—402 of the Code of Civil Procedure. Ill. Rev. Stat. 1985, ch. 110, par. 2—402.

Plaintiff took Dr. McParland's discovery deposition on May 14, 1985, and learned, for the first time, that his conduct was actionable. On September 18, 1985, with leave of court and without objection, plaintiff filed an amended complaint naming Dr. McParland as a party defendant. Her amended complaint alleged that Dr. McParland operated on the decedent without complete and adequate knowledge of decedent's condition, and that Dr. McParland's negligence resulted in the death of the decedent.

On January 22, 1986, plaintiff filed a second amended complaint with leave of court and without objection. The second amended complaint contained an additional paragraph alleging that plaintiff did not learn of Dr. McParland's negligence until his discovery deposition was taken on May 14, 1985.

Defendant moved to dismiss plaintiff's second amended complaint on the ground that it was time barred. The trial court granted the motion to dismiss, with prejudice, because the action was filed more than two years after decedent's death (January 18, 1983); the discovery provision in section 13—212 of the Code of Civil Procedure, (herein after the Medical Malpractice Limitations Act) does not toll the statute of limitations in a medical malpractice action for wrongful death (Ill. Rev. Stat. 1985, ch. 110, par. 13—212); and because Dr. McParland was not made a defendant within six months after being named a "respondent in discovery" pursuant to section 2—402 of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2—402).

Plaintiff's motion to reconsider was denied. This appeal followed.

The essential dates and events are:

| | |
|---|---|
| January 18, 1983: | Date of death. |
| December 21, 1984: | Complaint filed against the hospital and Dr. McParland named as a respondent in discovery. |
| May 21, 1985: | Plaintiff takes Dr. McParland's discovery deposition and learns of his actionable conduct. |
| September 18, 1985: | With leave of court, plaintiff filed amended complaint naming Dr. McParland as a defendant. |
| January 22, 1986: | With leave of court, plaintiff filed second amended complaint alleging date of discovery of negligence. |

The issues presented are: (1) whether the discovery rule tolls the statute of limitations in a medical malpractice action for wrongful death; and (2) whether naming Dr. McParland a "respondent in discovery" pursuant to section 2—402 of the Code of Civil Procedure can shorten the limitation period.

## I

Plaintiff's decedent died on January 18, 1983. Dr. McParland was named a party defendant on September 18, 1985, which is more than two years after the date of death. The Wrongful Death Act provides that every death action "shall be commenced within two years after the death of such person." Ill. Rev. Stat. 1985, ch. 70, par. 2(c).

Plaintiff contends that the two-year limitations period of the Wrongful Death Act is not beyond judicial construction. (See *Wilbon v. D. F. Bast Co.* (1978), 73 Ill. 2d 58, 382 N.E.2d 784; *Praznik v. Sport Aero, Inc.* (1976), 42 Ill. App. 3d 330, 355 N.E.2d 686; *Kenney v. Churchill Truck Lines, Inc.* (1972), 6 Ill. App. 3d 983, 286 N.E.2d 619.) Plaintiff further argues that the Medical Malpractice Limitations Act (Ill. Rev. Stat. 1985, ch. 110, par. 13—212)[1] should be applied to a wrongful death action based on medical malpractice and, therefore,

---

[1]Formerly section 21.1 of the Limitations Act (Ill. Rev. Stat. 1979, ch. 83, par. 22.1).

the statute of limitations does not begin to run until she discovered the negligence of Dr. McParland on May 14, 1985. Dr. McParland was named a defendant approximately four months thereafter, on September 18, 1985, which is well within the two-year statute of limitations.

Almost simultaneously, two opinions were released on this subject in two separate districts of this court. On September 25, 1978, the Second District released its opinion in *Fure v. Sherman Hospital* (1978), 64 Ill. App. 3d 259, 380 N.E.2d 1376, which supports the position taken by plaintiff. Two days later, on September 27, 1978, the First District released its opinion in *Greenock v. Rush Presbyterian St. Luke's Hospital* (1978), 65 Ill. App. 3d 266, 382 N.E.2d 321, *appeal denied* (1979), 72 Ill. 2d 582, which benefits the defendant.

Approximately four years later, the conflicting opinions of *Fure* and *Greenock* became the central issue in *Coleman v. Hinsdale Emergency Medical Corp.* (1982), 108 Ill. App. 3d 525, 530, 439 N.E.2d 20, *appeal denied* (1982), 92 Ill. 2d 567:

> "*Greenock* and *Fure* are the only Illinois cases which apply the section [13—212 Code of Civil Procedure] limitations provisions in a wrongful death case. These two cases approach section [13—212 of the Code of Civil Procedure] differently and reach different conclusions as to what event starts the running of the section [13—212 Code of Civil Procedure] two-year limitations period."

*Greenock* concludes that under section 21.1 (section 13—212 of the Code of Civil Procedure) of the Limitations Act, "It is clear that the event which commences the statute running is the claimant's knowledge of the death." (*Greenock*, 65 Ill. App. 3d at 270.) Applying this construction of the discovery rule, the trial court decided that since the plaintiff was at her husband's bedside when he died, she was aware of the date of his death and the statute of limitations started to run.

■■ Dr. McParland was made a defendant more than two years later, so the trial court dismissed plaintiff's action. The *Fure* court said:

> "[T]he question posed by the case at hand is whether the discovery rule can, in certain instances, apply to a wrongful death action where the date of death is known and does not have to be discovered, but the negligence or tort behind that death is not discovered until sometime after the date of death. (The 'certain instances' of course being those in which the failure to learn of the negligent aspect of the death was reasonably justifiable under the circumstances.)" (*Fure*, 64 Ill. App. 3d at 268.)

The court further stated:

> "In our opinion there should be no barrier to the application of the 'discovery' rule based on the ultimate tragedy of death where the circumstances of the death would have permitted an extension of the time limitation for the mere wounding or injury of the person and we hold that the fact of death does not *per se* foreclose the use of the discovery doctrine." (*Fure*, 64 Ill. App. 3d at 270.)

Thus, the *Coleman* court was faced with the choice of following *Greenock*, which holds that knowledge of the *fact of death* under the discovery rule triggers the running of the statute of limitations, or following *Fure*, which holds that knowledge of the *fact of defendant's negligence* commences the running of the statute of limitations. The conflict between *Greenock* and *Fure* was resolved in *Coleman v. Hinsdale Emergency Medical Corp.* (1982), 108 Ill. App. 3d 525, 533, 439 N.E.2d 20, *appeal denied* (1982), 92 Ill. 2d 567:

> "Our analysis of the various statutes of limitations and the case law leads us to conclude that the discovery rule as contained in section [13—212 of the Code of Civil Procedure] is applicable in a wrongful death case. Moreover, in a wrongful death case, the plaintiff has two years after the *discovery that the death was wrongfully caused* in which to file her action, regardless of whether the discovery had occurred prior to the expiration of the traditional two-year period of section 14." (Emphasis added.)

A petition for leave to appeal was denied by our supreme court in November 1982. Having declined to review *Coleman*, the supreme court has granted its tacit approval. Under the unique circumstances of the *Coleman* case, "[t]he proper principle to be applied here is that denial by the Supreme Court of a petition for leave to appeal *** is an approval of the decision, or of the result reached, although not necessarily an approval of the reasons expressed by the appellate court." *Corbett v. Devon Bank* (1973), 12 Ill. App. 3d 559, 567, 299 N.E.2d 521.

■ We therefore conclude that the application of the discovery rule starts the running of the statute of limitations on May 14, 1985, when plaintiff discovered *the fact of the defendant's negligence* which contributed to the death of her husband, and not on the date she discovered *the fact of the death* of her husband. Based on this interpretation, plaintiff's action was commenced well within the two-year limitations period.

## II

In her initial complaint filed on December 21, 1984, within two years of her husband's death, plaintiff sued Resurrection Hospital and named Dr. McParland as a "respondent in discovery" pursuant to section 2—402 of the Code of Civil Procedure. (Ill. Rev. Stat. 1985, ch. 110, par. 2—402.) On September 18, 1985, with leave of court, Dr. McParland was made a party defendant. Approximately nine months had elapsed from the initial filing to the date McParland was added as a defendant. The trial court held that section 2—402 required that Dr. McParland be added as a defendant within six months from the initial filing where he was named a "respondent in discovery." Therefore, plaintiff's action against Dr. McParland is time barred.

■ We must now determine, on the basis of the facts of this case, whether plaintiff's election to name Dr. McParland as a "respondent in discovery" rather than as a party defendant, at the time of the initial filing, required that Dr. McParland be made a party defendant within six months thereafter.

Medical malpractice actions have become a matter of public concern partly due to the spiraling costs of medical malpractice insurance. The enactment of section 2—402 was a legislative effort to reduce those costs by providing attorneys with a means to file such suits without "naming everyone in sight as a defendant," because it was believed that the designation as a defendant was a contributing factor. Section 2—402 procedures are optional "and the plaintiff's attorney still has the option to name persons as defendants, rather than as respondents in discovery at the outset." *Clark v. Brokaw Hospital* (1984), 126 Ill. App. 3d 779, 783, 467 N.E.2d 652.

We concluded that section 13—212, by application of the discovery rule, extended the time of the plaintiff to sue Dr. McParland to May 14, 1987 (two years after discovery of defendant's negligence). Has the enactment of section 2—402 effectively withdrawn the benefit of the discovery rule? Strict application of section 2—402 requires that Dr. McParland be made a defendant by June 21, 1985 (within six months after being named a "respondent in discovery"). Having added Dr. McParland as a defendant on September 18, 1985, plaintiff's action would be barred. Can section 2—402 be applied to shorten the statute of limitations?

This question was answered in *Flores v. St. Mary of Nazareth Hospital* (1986), 149 Ill. App. 3d 371, 502 N.E.2d 1:

> "Plaintiffs generally would be unlikely to avail themselves of this section if use of the section subjects them to the severe penalty of having their actions barred within six months, even

though the statutory limitation periods for the underlying causes of action have not run. If plaintiffs elect not to use the procedures established in section 2—402, the section will entirely fail to achieve the legislature's objectives. ***

*** We believe that the six-month period must be construed only to extend, and never to foreshorten, the limitation period. Section 2—402 is irrelevant to motions to add defendants made within the limitations period for a cause of action, even if the plaintiff previously named the new defendant as a respondent in discovery." *Flores,* 149 Ill. App. 3d at 375-76.

We therefore conclude that under the facts of this case, section 2—402 of the Code of Civil Procedure does not shorten the statute of limitations.

Accordingly, the orders of the circuit court of Cook County dismissing plaintiff's second amended complaint and denying her motion to reconsider that dismissal are reversed and this cause is remanded.

Reversed and remanded.

SCARIANO, P.J., and STAMOS, J., concur.